The next case is number 123264, Smith v. Smith, Agenda No. 10. Mr. Hamilton, are you ready? Yes, thank you, Your Honor. May it please the Court, I'm Phil Hamilton. I represent Joanne Smith, who's the appellant in this case. The facts of the case are pretty simple. In July of 2013, the decedent designated his spouse as the beneficiary of his IRA. In August of 2013, the decedent filed a suit in Madison County in the Chancery Court to restrain certain transfers of property. On August 8, 2013, Judge Crowder entered a preliminary injunction which prevented the parties from transferring any assets or making any changes of any nature with respect to accounts. In September 2013, the decedent filed for divorce. And then in March of 2014, the decedent changed the beneficiary of his IRA from his spouse, Joanne Smith, to his sons, who are the defendants in the case. In October 2014, the parties dismissed their divorce by agreement, and the preliminary injunction came to an end at that time. In March of 2015, Don Smith died, and his spouse discovered that the IRA had been changed. It seems clear under the law that the change of the beneficiary was improper. It was invalid at the time it was done because there was an injunction in effect. Counsel, does this come down to whether or not the change of beneficiary is a transaction? I think it probably does under the terms of the order that was entered by the court in the Chancery case. In the Chancery case, the order was broadly defined to cover any type of transaction. I submit transaction includes a change of beneficiary. The appellees suggest that, no, it would be maybe a sale of an asset or some kind of transfer of property. The appellate court seemed concerned about this concept of a change of ownership. With an IRA, there's no change of ownership. I mean, Don Smith owned that IRA. He was the owner at the time of his death. The only transfer he really could have made or the only transaction would have been to change the beneficiary. And the broadly worded order in the Chancery case seems to entail that there should have been no changes whatsoever on any assets at all, but that's one of the legal issues, and that seemed to be the appellate court was hung up on that question about, is a change of beneficiary a transaction? I submit that it is. A transaction has a product. There is plenty of case law, though, stating that a named beneficiary's right to an insurance policy or account did not vest until the beneficiary dies, right? That's correct. And does that suggest, then, that Donald did not, you already used the word, I think, take something that belonged to Joanne and give it to Scott and Jeffrey because Joanne had no vested right in the Vanguard account to begin with? I think absolutely. He could have done it after the divorce was dismissed and the injunctive order ended. And that's an issue that seems to be, if the court reverses this case, it should be remanded for further proceedings on the question of, did Don Smith do anything with that IRA to ratify the prior invalid change of beneficiary? But he could not have changed that beneficiary at any time while the divorce proceeding was pending and the injunctive order was in effect. Did any sort of exchange take place when Donald executed the change of beneficiary form? Did any property change hands? Did any real exchange take place when that happened? No. How has that been in violation of the order? The injunctive order barred all transactions. And I submit that a transaction, including a change of beneficiary, is a transaction involving that account, even though there's no transfer of ownership, even if there's money, no money changing hands. A change of beneficiary, it would have made no sense to enter into an order like that if someone could change the beneficiary on an insurance policy or change the account in some fashion to remove an account holder. Obviously, I think the parties intended to freeze any and all transfers at that time that they entered into the order. So do we really come down, going back to maybe what Justice Garmon was talking about, do we have to decide whether transaction implies some sort of exchange? And if we find that it does mean there has to be an exchange, does your client lose? I don't think there has to have been any exchange of consideration. I don't think that's what transaction meant. Right. I'm saying if we decide that it does have to have an exchange, does that end this case as far as you're concerned? I don't know why that would have been central to the injunctive order and the admonition to the parties to follow it. I mean, in other words, if there had just been some removal of somebody from an account, there's no change of hands or change of money at that point, but that was something you couldn't do under the terms of the injunctive order. So, no, I don't think that that would mean that the appellant loses the case at that point, that there was no exchange of money because the injunctive order doesn't say anything about, you know, exchange of considerations as part of the issue. The defendants devote much of their brief to various allegations that were made in this chancery case, the underlying case. And, of course, there's a dispute of fact and question of the relevance of those allegations. They seem to ask the court that if you're going to reverse it, you'll go back to the circuit court for additional proceedings, and I tend to agree with that. I mean, I think this court, if it reverses, could find that Joanne Smith owns that IRA, but I concede that they haven't had an opportunity to present their answer in their affirmative defense. I have to concede that point. Maybe there's some factual issue that they can bring up that would somehow mitigate the improper change of beneficiary. And I think the two issues are, what were the circumstances relating to Don Smith's determination of who should be the beneficiary under the IRA to begin with? I have evidence that shows that he took action to designate her as the beneficiary, and I also have evidence that shows he took action to change it to a son. That's not the record before the court. Presumably, they would have an opportunity to dig into that question. And then the other issue is, once the divorce got dismissed prior to his death, did Don Smith do something to ratify the prior improper act? I submit the facts are going to show no, but I concede that the appellee would have an opportunity to dig into that, as I must. I mean, this was a motion to dismiss the complaint. It was a little surprising that the court actually ruled based on, in the way that it did on just a strict matter of law, would have made more sense to at least get to the summary judgment stage. But I submit that procedurally, it was certainly defective to dismiss the complaint based on the issues that were presented. So, depending on what the court would do at this point in the process, and assuming that it does send it back to the circuit court, according to my calculation, there are four issues that could still be conclusively resolved by the court at this point. The one is the one that's well settled, which is the injunction must be obeyed at the time that it's entered, until it's later vacated or reversed. And when the injunction comes to an end, that doesn't excuse the prior improper act. That's all well settled law, and the court can confirm that. But in that period, after the case was dismissed and the injunction was dissolved, he had the authority to change the beneficiaries. You would agree with that? I do. Okay. So, in that period, there was no limitation on what he did. You're just saying your argument seems to be that he would have to file the paperwork a second time. Correct. He would have to do something to, he'd have to refile the beneficiary designation, he'd have to ratify the prior improper act in some way. There was a period of about five months before he died. I submit the facts are going to show he never did anything. But I do concede that point. The other factual issue that, or the legal issue that the court could resolve at this point, is that the divorce was dismissed as opposed to a death. Ending the divorce does not excuse the prior improper act. The appellate court seemed to draw a distinction between death bringing an end to the disillusion, or to the injunction, as opposed to a voluntary dismissal. And the dissent pointed out in her comments that there's no reason for the law to evolve in that direction at all. The difference between death, ending the injunction, and a voluntary dismissal makes no difference. I mean, they had to file that injunction as long as it was in effect. They had to do that. So that's the second legal issue I think the court could resolve. The other legal issue which we've already touched on is that the order barred all transactions. Defendants suggest that the order only precluded transfers of property, but the order had a very broad wording. In the New York life insurance case that was cited to the court, the order in that case was very broad. It said you can't transfer, you can't do anything. And the court found that the injunction had to be followed while it was in effect. Changing the beneficiary is a transaction. I think the court could and should address that legal issue for purposes of possible proceedings in the circuit court. And then the fourth issue that could be resolved would be that the circuit court held that once the divorce was dismissed, that the change of beneficiary became effective after that date, reasoning that there was nothing for Don Smith to do to confirm the change of beneficiary. But that's not correct. That can't be correct. If that act was invalid at the time it was done, he would have had to do something to confirm the prior invalid act. He could not have just stood there and said, well, Joanne Smith doesn't know that I've made this change. Opening up yet other additional issues that might be relevant at the trial court. Did Joanne Smith know that he had changed the beneficiary designation on his IRA? We already alleged in the complaint that she did not. She did not know about the change of beneficiary until after Don Smith died. Would she have entered into a stipulation to dismiss that divorce, knowing the potential consequences of it, if she had known that the change of beneficiary was in effect? No, she would not have done that. Those are all issues that the trial court might have to consider if this case goes back. So we ask that the court find that Joanne Smith should keep the IRA or alternatively remain it back to the circuit court for further proceedings. Thank you, Mr. Hamilton. Mr. Hertz. Hertz, I'm sorry. May it please the court, Mr. Hamilton. My name is Michael Hertz. I represent Scott and Jeffrey Smith, the sole children of Donald Smith. On March 13, 2014, Don Smith named his two sons as the beneficiaries of his Vanguard IRA. It is important and helpful to understand the facts that led up to that change and the facts that led up to this injunction being entered, to understand the intent and the purpose behind that injunction. On August 6, 2013, Don Smith filed for a petition for temporary restraining order against his wife. He alleged in that petition that on July 21, 2013, he was admitted to the hospital. During the time period he was in the hospital for two weeks, that she was forging his signature to withdraw funds from his accounts, that she withdrew in excess of $134,000 from his U.S. Bank and Regions account between July 22 and August 2, 2013, and that those funds were deposited into her single-named account. Now, while he doesn't mention this Vanguard account, I take it he probably didn't know that something had happened on the Vanguard account, but it's around this same time, on July 31, 2013, that Mrs. Smith's name was added as the beneficiary on the Vanguard account while he was in the hospital. The confirmation of the account change was addressed to Mr. Smith at his residence. He was not at his residence at that time. When he got out of the hospital, he alleged in his petition that his wife had denied him access to the residence, had denied him access to his financial papers. So then on, and further, then on August 5, 2013, that she attempted to liquidate his Scottrade brokerage accounts by providing an invalid power of attorney, ordering Scottrade to liquidate the accounts and remit all of the funds to her. So then on August 6, he files this petition asking that an injunctive order be put into place to stop this. This is the kind of conduct that Mr. Smith was trying to stop when this injunctive order was entered. And so the order stated at that time, or what he asked was to maintain the status quo, directing the banks, credit unions, and Scottrade to return the funds and prevent his wife from further converting his assets. A preliminary injunction was entered on August 8, 2013, which provided that any and all funds withdrawn from the bank. There is an issue as to whether Mrs. Smith changed the beneficiary on the Vanguard account? That has not been litigated yet. But you're implying one? Yes. It happened at the same time that he claimed that she was forging his signature and withdrawing his funds from all of these other accounts during the exact same time period. And prior to her getting her name on the Vanguard account, there was no beneficiary designated on the Vanguard account. Wasn't the purpose of the injunction, though, to maintain the status quo? To maintain the status quo to prohibit the parties from further dissipating these marital assets. And he did nothing to dissipate any assets while the injunction was in place. He engaged in what I would call estate planning by designating his sons as beneficiaries on this account, presumably after he found out that his wife had been named. But that was not prohibited by the order. He didn't take any money out of the Vanguard account while the order was in place. Do you agree that it would be incumbent upon this Court to define  this specific order? You have to read it together with some of the other things that were being prohibited. Because I think transactions by itself is kind of a broad term. It could potentially apply to everything else that's explicitly listed in the injunction where it talks about transfers, buy orders, sell orders, withdrawals, deposits. So I think certainly if you read it within that context, we're talking about transfers and taking money out of the account, not talking about estate planning. But certainly there was no exchange that took place between Mr. Smith and his sons while that injunction was in place. On October 29th, so there was a divorce case that was pending for about a year. And then at the end of the divorce on October 29, 2014, and this is where this case is a little bit different from the other cases that have been cited. In the order of dismissal, the parties expressly wrote into that dismissal order that the prior, what they called the hold orders as to the financial accounts of the parties were dismissed and withdrawn. And so this isn't, you know, my, Mr. Hamilton alludes in his brief that, you know, we're claiming that, you know, this is, they were withdrawn and that's some kind of a, you know, legal term that I'm making up out of nowhere. It's in the order. They expressly wrote in there that those prior orders were dismissed and withdrawn by the October 29, 2014 order. Then a period of five months elapses between that order being entered and Mr. Smith's death on March 30, 2015. Vanguard had processed that change of beneficiary. They make reference that, you know, it didn't comply with the account agreement. They processed the beneficiary change. They show Scott and Jeffrey Smith as the beneficiaries of that IRA. So it complied with the Vanguard account agreement. So we think that the trial court and the appellate court got it right. That, you know, when this injunction terminated, there could be no question when it was expressly dismissed and withdrawn that there was no prohibition from Mr. Smith naming his sons as the beneficiary. There's nothing in the law. There's nothing in the account agreement that says that he had to do that a second time. There was no transfer that took place when he did it. So for those reasons, we asked the court to affirm. Thank you. Rebuttal. Defendants, again, dwell in their argument on these disputed allegations that were made in the Chancery case. The court did not consider that in making its decision on the motion to dismiss. The court's never gotten into those issues as to whether they're relevant in any way. It's hard to see how some activity with respect to, let's say, a Scott trade account would have some bearing on whether or not the parties adhered to an injunction as to this Vanguard IRA. Difficult to say why any of that stuff would be pertinent. There are a number of items that parties have cited to that are not in the record. One of those is Don Smith's telephone call to Vanguard in which this took place on March 13, 2014. He says, I want to change the beneficiary. I designated my wife Joanne F. Smith. I want to change it to my sons. We've been through a divorce. But he's specific about saying, I, Don Smith, designated my wife Joanne F. Smith. So the issue that they try to raise relative to whether Joanne Smith had some role in getting herself selected as the beneficiary of the IRA, there's no factual issue to support that. Don Smith took action on his own on July 31, 2014 to name Joanne Smith as the name beneficiary on that IRA. And for reasons which will never really be known, he changed it during the divorce while there was an injunction in effect. The purpose of the injunction, as noted a moment ago, was to preserve the status quo as to all assets. That was the purpose of the injunction, preserve the status quo. Changing the beneficiary on an IRA is changing the status quo. It seems clear that whether there was any consideration involved is irrelevant. They weren't supposed to do anything with the accounts at all, not without leave of court. And in fact, in the case, they did at one point seek leave of court to approve a distribution from the IRA for a required minimum distribution. They sought permission of the court to make a required minimum distribution from the IRA. So there's no reason to think that that situation is somehow different than changing the beneficiary of the IRA. I'm surprised we're still hearing about this in appellate argument, but the dismissal of the divorce case did not result in vacating all of the prior orders, including the injunction order. That's not what it says. The dismissal of the divorce terminated the divorce. The injunction ended, but it did not, in any sense, vacate the court's prior orders. That would have made no sense. The injunction was effective from the date that it was entered until the date the divorce was terminated. Unless there's any further questions, I've completed my argument. Thank you. Case number 123264, Smith v. Smith, will be taken under advisement as agenda number 10. Mr. Hamilton, Mr. Hirsch, we thank you for your arguments this morning.